Good morning. May it please the court. Rockford Crastle representing Appellant Gas Workers Union Local 340. This case involves the challenge to an arbitration award issued between the parties who had agreed to admit their collective bargaining agreement disputes to arbitration. The scope of a court in reviewing an arbitration award is exceedingly narrow. When the parties have agreed to submit disputes involving the interpretation and application of a collective bargaining agreement to arbitration, it is a rare case when the court has justification for overturning or vacating an award. I submit this is not one of those cases. I'd like to make the main points I want to make this morning is that in vacating the arbitration award, Judge Magnuson read the absolute cause language of the disciplinary section of the contract, which is Article 26, in isolation. And this language, as the entire agreement. And in this case, it must be read specifically in the context of the first sentence of Article 26, which provides that the company must have just cause to terminate or discharge employees. And it doesn't do this every day. The word just isn't actually in there. That's true, Your Honor. That's true, Your Honor. But the both of the agreement to say just cause or to just have the word cause and that's understood to mean just cause in the rubric that we're... It's understood in the rubric of industrial relations and industrial common law that the word cause encompasses just cause. So the agreement typically wouldn't say just cause, huh? No. Well, some agreements would say just cause and some wouldn't. But when it doesn't say just cause, that is what is in fact read into it. And in fact, in this case, over the course of the 40 years that the parties have been arbitrating cases and using this language that's been in the agreement for that long, just cause has always been the issue that the issue is. And in fact, in this case, Your Honor, at the beginning of the hearing, the arbitrator asked the parties if they had stipulated to the issues to be decided. And in fact, the company stipulated that the issue was, did the company have just cause to terminate the employee? And if not, what should be the appropriate remedy? I thought the company submitted different issues. The company, if you read the brief and you read through the transcript of the hearing before the arbitrator, the company specifically agreed that that was the issue. Where would I look for that? Do you have a citation handy for the stipulation that you're looking for? If you don't, that's fine. We have the whole record. It is in the record. I know I referenced it in my brief. But what happened is that the district court, Judge Magnuson, failed to read this absolute cause language, which is contained in Article 26, in conjunction with the entire agreement. In addition, he assumed that if the arbitrator found that one of these absolute causes existed, that he, one, wasn't able to impose a just cause analysis, and two, that the inquiry stopped there. And I submit that the inquiry does not stop there, because there are many limitations on the company's discretion. There's limitations contained in the contract explicitly prohibiting the company from discriminating against individuals based on union affiliation, age, race, sex, religion, etc. And in addition, there's language in the contract that provides that the company must comply with the federal, state, and federal law, and that individuals can file grievances concerning those. So even if an arbitrator were to find that there were grounds for discipline or discharge, that is what was found, the arbitrator did. But he also went beyond that, and that's one of the second points I want to make. What ground did the arbitrator find was a basis for discipline? What he found was that the individual grievant, who had been employed for 20 years without any prior discipline, had, on several days, padded his time, basically. And in padding his time, he had put that he was at a place working longer than he was, as demonstrated by the company's tracking system. And so the company discharged him for dishonesty and neglect of duty. And that is what the arbitrator found, that in fact, he would have to say that he was dishonest and was neglecting his duty, at least at part of this time that the company alleged. The company had asserted more time than what the arbitrator- Right, much more time, in fact. Yes. And in fact, the case went on for four days, because there was a great deal of dispute concerning the accuracy of the company's tracking system, what the policies were regarding reporting, and the fact that this individual had trouble with his computer in his truck sending and receiving signals, and that he couldn't always transmit those things as quickly as he wanted to. So he would have to go somewhere else to do that. So all of those things were arbitrated. And ultimately, the arbitrator did find that, well, a lot of it didn't carry water, but that some of it did. Can we focus on the legal issue that we have to resolve here about when the court can set aside an agreement? Suppose you have an arbitration agreement that the arbitrator says is ambiguous, and the company says, no, it's unambiguous, and the arbitrator can't say it's ambiguous when it's clearly unambiguous. Now, in that situation, is the court supposed to defer to the arbitrator because he's purporting to construe the contract, or is there some limit on that? Because we have a couple cases that talk like maybe there's some limit, but if the arbitrator says he's construing the contract, even if he's wrong, query when the court can get involved. Right. And I would say that it's rare, if ever, as long as the arbitrator is construing the contract. In this case, the arbitrator did. He referred to the various provisions in the agreement. He referred to the past practice of the parties. He referred to other arbitrators' decisions, which had also analyzed that language. And so, I would say that it is rare, unless there's nothing in the contract that the court could point to and say there is nothing, there is no possibility of any ambiguity, then in that case, possibly if the arbitrator simply ignored the language, and ignored the language. What does that mean? That's the hard part about these cases. Once you say, well, it could be a case if he, quote, ignored the language, what does it mean to ignore the language? If he just gets it wrong, is that ignoring the language? If you're talking about the arbitrator, if the arbitrator just gets it wrong, that's not something that the court can overturn, because parties have agreed to submit the issue to the arbitrator as final and binding. And so, I think the case that's most opposite in this matter is the case of PSC Custom versus United Steel Paper and Forestry. And in that case, there was similar language in the contract. There was an article that provided that the company had to have just cause to terminate employees. But then there was another article in the contract, Article 29, and standards of conduct that provided specific types of misconduct and precise penalties that had to be imposed for that type of misconduct. And in that case of PSC Custom, the grievant had been found to be guilty of insubordination. And the penalty for insubordination listed in the contract was discharge. And that was in the standards contact as well. But there was this tension between the two provisions, the just cause provision in Article 21 and these standards and specific penalties in Article 29. This court basically, and the company in that case, appealed the decision and made the same argument that the company is making here, that the arbitrator ignored the specific and unambiguous language of the contract that provided discharge for insubordination and imposed a lesser penalty, which was a suspension. And the court disagreed with the company. The court said whether Busher was discharged for just cause was a matter of contract interpretation. It was within the arbitrator's authority. PSC's contention that the arbitrator ignored the plain language of the CBA is based on our reading of Article 29 and the standards of conduct in isolation, which provide that the penalty for insubordination is discharged. Collective bargaining agreements, however, are to be construed as a whole with the terms read in the context of the entire agreement. I submit that that's the exact case here. There is a sentence- Did you give that case to Judge Magnuson? Yes, that was given to Judge Magnuson, Your Honor. And he doesn't address it. And that was another point that I have to make, is that Judge Magnuson completely ignored PSC Custom. He didn't address it. In addition, he cited two cases that PSC Custom, in fact, distinguished in making its ruling. The two cases that he cited in support of his decision were distinguished- He relied on your case in that way. Right. Yeah, he relied on it. So, I think that it's clear that the judge, Magnuson, did not employ the narrow reading of the court's rule the way he should have. He instead- Well, as I understand the court's ruling, the issue that was before the arbitrator was whether or not there had been a violation, not what the punishment was to be. No, that was the issue, was what the punishment would be, what the remedy would be. So, it wasn't contested that there was no violation? No, it was contested. I thought it was contested that there was- Yeah, there was contested whether there was a violation, and it was contested if there was a violation, what the remedy should be. In addition- But as I understood what the judge did was once the determination was made that the violation fit the category of an absolute violation, that the arbitrator's role ended. Because the company preserved for itself in the CBA the ability to discharge an employee for dishonesty. And once dishonesty is determined through the vehicle of arbitration, the company's ability to exercise its option to discharge was available. Well, and that's where Arbitrator Miller disagreed. Because he said the first sentence of the discharge and the discipline provision provided that the company had to have just cause. And so he read those two sections, the absolute cause provision, which Judge Magnuson relied on, in isolation. Judge Arbitrator Miller read that and said that- I'm not sure, help me with the isolation part. Because when I read the full paragraph of Article 26, it all runs together. It's not like they are separate. And when you read the whole thing together, you have the parenthetical in conjunction with the company having absolute cause from which there shall be no It sounds like it is all together, and that if you've got one of these special four categories, that even arbitration isn't available to avoid the company's option to discharge. And I would submit that the union and the arbitrator have said that those two sentences are in fact separate. And that it's the arbitrator's power and authority to analyze those and interpret them. But they're not part of separate parts of the contract. They're part of the very same discipline, Article 26. And they're inconsistent, because one says you have to have just cause, and the other one lists these absolute causes. But if those absolute causes are taken to the natural outcome, then an employee could be terminated for even the most minimal type of dishonesty, the most minimal type of neglect of duty, neither of which are defined in the agreement. And both of which could relate to pretty much every form of conduct that exists within the company. So those things all have to be analyzed and interpreted, and that's the goal of the arbitrator. But I would like to say one more thing, and I was going to reserve some time, obviously. But in addition to this finding that the arbitrator made of neglect and misconduct by treating Ness inappropriately and in a desperate and unexplainable fashion before he was terminated. And that the termination itself was arbitrary and discriminatory. So he made those separate findings that this is what the company did wrong. They made arbitrary and discriminatory treatments, okay? And he has, as an arbitrator, the authority to make a remedy for the wrong that he believes that the company has done. And the remedy that the arbitrator chose to impose was reinstatement without back pay. And I submit that if this arbitration decision is vacated, the company will be free to engage in any type of arbitrary or discriminatory conduct in relation to these offenses, whether regardless of their significance, without consequence. And there must be consequences if, in fact, the company engages in some type of misconduct as well. Thank you. Thank you, Mr. Creston. Mr. Lipschultz. May it please the court, Noah Lipschultz on behalf of CenterPoint Energy. Your honors, the district court properly vacated the arbitration award here, because the arbitrator disregarded clear and unambiguous language in Article 26, which created special limitations on the arbitrator's authority in circumstances where there is a factual finding of absolute cause for termination. Article 26 at the outset does refer to cause, generically. But then it goes on to specifically, without excluding other causes for discharge, list four absolute causes. And then it states, and this is important, there shall be no appeal to negotiation or arbitration between the company and the union except as to the question of whether the employee is guilty of the facts constituting such absolute causes. This is clear and specific limitation on the arbitrator's authority that was not present, for example, in PSC custom. I think that's very important to know. There's two distinguishing factors in PSC custom. Number one, the parties there stipulated to the just cause framing of the issue, and there was no record evidence to contradict that stipulation. Here, it's very clear from both the arbitration transcript, and if you look at the appellant's appendix at the very end, these transcript excerpts that they submit, there's clear testimony on Article 26 in the absolute cause issue. There's record evidence in terms of the briefs and the arbitrator's award that this issue was raised and preserved. That was not present in PSC custom. What about the stipulation at the beginning of the hearing? After we talked about it with Mr. Crastle, I found it here on page 110 of the appendix. Arbitrator Miller says, can we stipulate to the issue? Mr. Crastle says, I think we've stipulated. Was the grievant discharged for cause? If not, what is the appropriate remedy? Miller, would that be agreeable? Mr. Collins, I assume he's with the company. That's agreeable. Mr. Collins was counsel for the company. So isn't that an agreement that the issue is, was he discharged for just cause? And if not, what's the appropriate remedy? In arbitration, the record is only closed after the post-hearing briefs are submitted. Later on in the hearing, Your Honor, the parties put on evidence and argument regarding the absolute cause issue as distinguished from just cause. Then in the post-hearing brief, there were two different ways the issue was framed by the company. Number one, were the facts proven to show absolute cause? And number two, if they weren't, was there just cause for the discharge nonetheless? And that was considered and preserved in the record. For there to be a waiver, the company would have had to raise this issue in the district court for the first time. So I don't think there was a stipulation on that. And I think it's different than PSC Custom in that regard. The other thing I just want to note is that in PSC Custom, all you had was a listing of offenses that could result in termination. And then a just cause provision. And you had no language, you had no linkage between the two. Whereas here, you have a specific call out within the context of Article 26. And one thing that's notable is that nowhere in the union's briefs or Do they try to explain, what does it mean except that the question of whether the employee's been guilty of the facts? What does that mean? I think we're, opposing counsel's told us they're not reconcilable. They're in conflict and are ambiguous. They're not ambiguous and they are reconcilable for several reasons, your honor. Number one, it's one thing to set forth a general standard of cause. But then it's clarified by saying, if we have these four categories, instead of the normal cause finding, we're going to call out one of the seven tests of just cause, because the finding of factual support for the company's burden to prove its case on the facts is one of the elements of just cause. There would be no purpose served to call out that one element of just cause and then conclude, but just cause applies anyway. There was no ambiguity in that language, just like there was no ambiguity in St. Louis Theatrical Company or Ulrich Talbert, where there was similar arbitration language which confined the arbitrator to solely being a fact finder. If you find these facts, that's all that is being arbitrated. And I think the same is true here. When you talk about Judge Magnuson's decision, he was presented in his briefing at the district court with competing lines of authority. Is our case more similar to Ulrich Talbert and St. Louis Theatrical Company? Or is it more similar to Alcon Packaging and PSC Custom? He found it was more similar to Ulrich Talbert and St. Louis Theatrical. And the reason he did so is because the language is most similar in those two cases and all three limit the arbitrator's authority to finding facts. Did the misconduct occur? If that misconduct occurred, that is the end of the inquiry. And I think what you can- Let me ask you this. Even if you're right about the proper reading of the contract, why isn't that just an argument that the arbitrator misread the contract? And you're stuck with his misreading of the contract because you agreed to submit this to arbitration. It's not a misreading of the contract, your honor. When you read language out of the contract or nullify contract language, in other words, under arbitrator Miller's ruling, the absolute cause provision is literally out of the contract. It's all just cause anyway, and there'd be no purpose served behind the carve out and the listing of the four offenses if it's all just cause anyway. That's not interpretation. And I think it's clear- What's the difference between interpretation and erroneous interpretation? I mean, he said, this is how I read the agreement because the two provisions taken together, in his view, meant that he had this authority. What's the difference between interpreting and erroneously interpreting and- Sure. Yeah, that's the difficult thing about these cases. I think it is, your honor, and I think you've touched on it. The difference between erroneous interpretation and just interpretation is there has to be an underlying ambiguity in the contract. I think you alluded to this in some of your- But who decides whether there's an ambiguity? I mean, the arbitrator thinks there's an ambiguity. Well, he didn't, let's be clear, he didn't find an ambiguity in this case. There's no record evidence he found an ambiguity in this case, and an arbitrator is not permitted on clear and unambiguous language to simply declare there's an ambiguity and then be shielded from any judicial review. That's not what the law is. And I think that's important here is that the arbitrator didn't say that anything was ambiguous. What he said at the outset, page 22 of the opinion is where you can see him frame the issue, and he starts to become untethered from the language of the contract. What he says is, he frames the issue in two ways. Number one, did the company prove the facts involving dishonesty and neglect of duty? And that's perfectly permissible under the absolute cause language. But then number two, was the grievance misconduct, the type of conduct serious enough to warrant termination? He went off the rails there because Article 26, the parties already bargained the four categories of offenses that are serious enough to warrant termination. And the arbitrator's not permitted, once he finds the facts establishing those offenses, to then consider all these other factors that the union wants him to consider and that are part and parcel of a customary just cause argument. So there was no interpretive, there was no ambiguity. All the arbitrator did, and later on in the opinion when he addressed the absolute cause question, all he said was, that couldn't possibly be what the parties intended. And my notions of industrial fairness tell me I should apply a just cause analysis. He never once tried to reconcile those terms. He never once explained what the absolute cause provision meant, and how it conflicted, or if it even conflicted with just cause. He just said, it's unfair. And what he said was, he adopted the union's line of argument, which is that absolute cause could be any rule violation taken to its extreme. And then he disproved his own point, and I think this is an important point to bear in mind. There are many checks on the company's ability to simply terminate someone for absolute cause.  And the arbitrator Flagler and Arbitrator Jacobs awards show that if the company oversteps and calls something dishonesty or neglect of duty and it isn't, or doesn't prove its case, or gives an unreasonable interpretation of that provision, they're going to lose at arbitration, number one. The second check is if the company abuses the absolute cause language by finding absolute causes for minor offenses. The union has a remedy. They can bargain that language out of the contract, or bargain other limitations on it. So there are other external checks on an unreasonable interpretation. And the arbitrator, to be clear, has authority to find facts to say that what happened is not one of the absolute causes. Or to interpret, frankly, the terms dishonesty and neglect of duty, which is what Arbitrator Flagler did. But that's different than what happened here. Arbitrator Miller made a clear finding that there was neglect of duty and dishonesty. He then, once he found that, his job was done. And I think Judge Magnuson got it correct. Once he made that finding, which was his sole authority under the contract to determine a question of whether the facts constituting the absolute causes have been proven. Once he finds that, his role is finished. There's nothing further for him to do. And that language is clear and unambiguous. And the only language that's similar to it is in Ulrich Talbert and St. Louis Theatrical Company. And I'll note, in St. Louis Theatrical Company, where this court upheld the vacatur of an arbitration award, the arbitrator did something very similar in that case. He found factually that the employee participated in a strike in violation of the no strike clause. But then he went further and considered management's conduct in mitigating the penalty. And this court held that he was not permitted to do that because the language in the contract, just like the language here, limited his authority to fact finding. And I think that case couldn't be more analogous to this case. And the same was true in Ulrich Talbert, where the parties call out specific limitations on the arbitrator's authority to formulate remedies. That's permissible under the United States Supreme Court case in MISCO. And that's clearly what the parties did here. So- What about MISCO? What was your point about MISCO? In MISCO, the Supreme Court, part of its holding was that parties may negotiate limitations on an arbitrator's authority when it comes to remedies, that's permissible. So in other words, while an arbitrator may, in the general sense, have the authority to disagree with a penalty imposed by the company, under a general just cause standards, the parties are free to negotiate specific limitations on that authority. And our contention is that's what was done here in Article 26, through the absolute cause language. Now, with respect to the Flagler and Jacobs Awards and all the other arbitration awards that are in the record in this case, not one of those arbitrators avoided the issue. In other words, all of the arbitrators, whether they found in favor of the company on a particular grievance or in favor of the union, all understood there were two different arenas. One, a just cause arena or a cause arena, and two, an absolute cause arena. So while Arbitrator Miller cited the Jacobs and Flagler awards and claimed support for his decision from those awards, those decisions, Arbitrator Jacobs specifically said, and this is at page 184 of their appendix, this case does not fall within the purview of absolute causes as defined by Article 26 and does not proceed on absolute cause analysis. And Arbitrator Flagler, and this is at page 213 and 214 of the appendix, he found that there was no neglect of duty proven. So any restriction on his authority to reduce the penalty, which might arguably be contained in Article 26, is inapplicable in that case. So there's no arbitrator that has found ambiguity in this language. All the arbitrators that have ruled have understood, except Arbitrator Miller, have understood that it contains a limitation on their authority once they find facts. How long has this specific CBA language been in effect? I think the record showed it had been in effect for over 40 years. So it's been in effect for a very, very long time. And the parties have had arbitrations, obviously, under it. And the company has won some and it's lost some. And it's lost some where the factual findings didn't support the absolute causes. And a just cause analysis was explicitly applied in those cases. But in this case. What cases have you won where the absolute cause language was applied? We cited cases in our brief. I believe there was a decision from Arbitrator Powers and Arbitrator Imes and Arbitrator Frankman that all acknowledged that Article 26 prohibited them from considering anything other than the fact of the misconducted issue. So the company has- Are those decisions in the appendix for us, or just the citations? I believe the decisions are in the appendix. I know they are cited in the briefs, but I believe they are in the appendix as well. I guess you weren't involved in the appendix preparation, maybe. It looks like you were not on the briefs. Correct, I was not on the briefs. I've been brought in for the appeal. But I believe in reviewing the appendices that the arbitrator- Well, the briefs are part of the appeal. Pardon? You were brought in for the appeal, but the briefs are part of the appeal. Correct, correct. And in reviewing the briefs and the appendix, I believe Judge- You were brought in for oral argument. Correct. I see. I believe those decisions, though, are part of the record. I guess, to sort of wrap things up, I think it is important, again- Have you ever seen an agreement that says more explicitly that just cause analysis does not apply in certain circumstances? I have, Your Honor. There are agreements, and I'll submit it's more frequent to have cause or just cause language unencumbered by anything else. But I have negotiated agreements myself where there are restrictions on only finding the facts involved for a specific category of offenses that are deemed so serious that the company and the union have bargained there's not going to be further consideration other than the due process, which is still in effect, of company, you've got to prove your case. You've got to prove the facts behind the offense, but for this listing of offenses, that's all that is to be arbitrated. I have seen that before. That is what exists here. In terms of the interpretation of- But I mean, the ones you're talking about, would it specifically say, and the arbitrator will not apply just cause analysis or something to that effect? Typically, what it would say was, our arbitrator is limited to fact finding. Typically, that's how the language would read, because that's one of the seven just cause tests, fact finding. And then there's a host of others. But it makes it clear what the scope of the arbitration is, which is fact finding. This idea that discrimination can run rampant, for example, if the company's interpretation is accepted. If I may finish this point, Your Honor. You go ahead. There are multiple checks against that. There's state and federal statutes against discrimination. Arbitrator Miller, by the way, rejected a finding of discrimination in this case. And again, if the company abuses these four categories by applying them in a disparate manner, it's going to have to reckon with the union at the bargaining table. But for now, this is what the parties negotiated, and the arbitrator ignored it. Thank you. Thank you, Mr. Lipschultz. Mr. Crastle. I would just like to make a couple of points. One is that the arbitrator clearly did look at the two sections of Article 26. And basically said, you can't reconcile this, that the parties definitely expressed their intent that the company would have just cause. Did the arbitrator make an express finding of ambiguity? Yeah, I mean, basically he did, because he said, this is the party's intent. The party's intended that the company have just cause, okay? And then he said, I have to reconcile that with these absolute causes. So he may not have used the word ambiguity, but in fact, that is what he came to. He came to say that there is a tension and a conflict between these two provisions, because the company expressed that it would have to have just cause. And so, that's the case. With regard to, and I'll briefly just say, with regard to the prior arbitrations, what happened in the Flagler's and Jacob's case was, is that the arbitrators acknowledged the same problem with this language that Arbitrator Miller did. And they agreed that it didn't make any sense. But what they did was they tended to use the just cause language to interpret article, or the absolute cause, and say, okay, well, that doesn't make sense. So we're going to interpret, instead of getting into this issue, we're just going to interpret neglect of duty in a way that it can't be, that it has to have just cause if it's going to be an impact. Interpreted it narrowly, you mean? And so they had to use the just cause to even use that to interpret those things. And that's how they avoided this particular, making the exact same finding that Arbitrator Miller did, which I acknowledge is the case, that he's the arbitrator, to really address this case head on. But it's not because it hadn't been addressed every case before, and it's not because Arbitrators Flagler and Jacobs hadn't laid the groundwork for it, because they did. As court knows, that's often how these cases are resolved. One case lays the groundwork, and then it builds on it. And this is the- How about this sentence from the arbitrator's decision where he says, to interpret Article 26 in any other manner would violate all of the basic notions of fairness and due process firmly established in the history of industrial relations. Do you think that's what the Supreme Court has in mind when it says the arbitrator can impose his own notions of industrial justice? No. No. I do not, because the Supreme Court has also said that the contract encompasses the rule of the shop and the rule of the industrial common law. And what Arbitrator Miller's there referring to is the industrial common law that the Supreme Court has acknowledged and has accepted as an implicit part of any collective bargaining agreement. So that's not his own notion of fairness. The notion of fairness that Arbitrator Miller imposed was the notion of fairness that was exhibited by the parties in agreeing to a just cause. And in putting limits on the company's discretion. And that also the findings that he made of the company's arbitrary discriminatory conduct. And those, the notions of fairness that he imposed were those. Thank you. Thank you, Counsel. Thank you. Court wishes to thank both parties for the argument you provided to the court this morning. And the briefing that's been submitted in the case, we'll take the case under advisement.